UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10486-RWZ

ADELPHIA AGIOS DEMETRIOS, LLC

v.

ARISTA DEVELOPMENT, LLC *et al.*

MEMORANDUM OF DECISION

March 12, 2013

ZOBEL, D.J.

Plaintiff Adelphia Agios Demetrios, LLC ("Adelphia") sues defendants Arista Development, LLC ("Arista"), Gregory Botsivales, Harry Botsivales, and Scott Weymouth for fraud, breach of contract, breach of the implied covenant of good faith, and violation of Mass. Gen. Laws ch. 93A. Now pending is a motion to dismiss all claims against the individual defendants and certain claims against Arista.

**I. Background**[1]

Adelphia and Arista are two limited liability companies involved in commercial real estate development. In September 2004, they entered into a contract under which Adelphia would locate commercial properties for development and offer them to Arista. Arista would then develop the sites for commercial use, primarily as Walgreens

---

[1] As appropriate on a motion to dismiss, the facts are taken as alleged in the complaint. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 4 (1st Cir. 2011).

drugstores. Adelphia offered Arista eight sites under that contract, but Arista did not develop any of them. Adelphia cancelled the contract three months later, in December 2004.

Adelphia negotiated a second contract with Arista in March 2006. The contract again contemplated that Adelphia would locate suitable properties and propose them to Arista, which would develop the sites it considered promising. During the negotiations over the contract, Adelphia stated it would only sign if Arista promised to hire two civil engineers and promised to develop ten sites per year. Gregory Botsivales and Harry Botsivales, two representatives of Arista, promised to hire the two engineers and to develop ten sites per year as Adelphia requested. Adelphia and Arista then signed their new contract. Two hours later, another Arista representative named Scott Weymouth called Adelphia and confirmed that Arista would hire the two engineers and work on ten sites per year as promised.

Under the 2006 contract, Adelphia was entitled to a $50,000 finder's fee for each site that it offered to Arista and that Arista successfully developed. In addition, the parties agreed that each such site would be owned by a separate single purpose entity. For sites being developed into Walgreens stores, Adelphia would own 25% of each single purpose entity and Arista would own 75%; for other sites, the parties agreed to divide the ownership of each single purpose entity by agreement. The contract entitled Adelphia to full access to the books and records kept by Arista with respect to each site that Adelphia offered it. Arista reserved the right to reject any site offered by Adelphia "if, in [Arista's] sole opinion and exclusive judgment . . . the project is not viable,

2

saleable, or financeable." Docket # 10, Ex. 1 ("Contract") ¶ 13.[2]

Adelphia terminated the contract in October 2006, after it had been in effect for about seven months. Even after its termination, however, the contract remained binding as to sites Adelphia had already offered to Arista. Arista was required to provide Adelphia monthly updates on the development of such sites.

The amended complaint[3] names ten properties that Adelphia and Arista developed into Walgreens drugstores under the contract. Adelphia claims it was never paid its $50,000 finder's fee on eight of these properties, and was never paid for its 25% interest in nine of them. For the one property on which Adelphia was paid for its 25% interest, Adelphia claims Arista manipulated its financial records to report inflated construction costs, thereby paying Adelphia less in profits than its 25% interest was actually worth. Adelphia also alleges it was not provided with monthly updates about the development of the ten sites, and was denied access to Arista's books and records.

In addition, Adelphia claims that it offered twenty-one other properties to Arista that Arista failed to develop. Three of those properties were later developed into commercial drugstores. Adelphia also claims that Arista never hired the two civil engineers it promised, nor did it work to develop ten sites per year. Finally, Adelphia asserts that Arista "blackballed" it, interfering with its business relationships with commercial drugstore chains and preventing it from developing new properties.

---

[2] The contract is referred to in the complaint and is central to Adelphia's claims. I may therefore consider it in ruling on this motion to dismiss. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

[3] Adelphia filed its original complaint on March 15, 2012; it then filed an amended complaint on July 3, 2012.

**II. Legal Standard**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If the complaint's factual allegations fail to state a plausible claim, the complaint must be dismissed. Id. at 679.

**III. Analysis**

The pending motion seeks to dismiss all claims against the individual defendants and certain claims against Arista.

**A. Claims Against the Individual Defendants**

Adelphia asserts its claims for fraud, breach of contract, and breach of the implied covenant of good faith against all defendants. It asserts its claims under Mass. Gen. Laws 93A only against Arista and Gregory Botsivales.

The individual defendants first move to dismiss the claims against them for lack of service. However, returns of service were executed as to each individual defendant. See Docket ## 4, 5, 6. A return of service provides prima facie evidence that service was validly performed. Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008). The individual defendants have presented no evidence to rebut that prima facie showing. As such, the claims against them cannot be dismissed for lack of service.

But regardless of service, the amended complaint fails to state any claims against the individual defendants. The first count, for fraud, rests on two grounds: the promises that Arista would hire two civil engineers and develop ten sites per year, and

the alleged manipulation of Arista's financial records. In both cases, the facts alleged do not support any plausible inference that the individual defendants acted on their own behalf rather than as agents for Arista. The second and third counts rest on the contract between Adelphia and Arista, and its implied covenant of good faith; as the individual defendants were not parties to that contract, they cannot be liable for its breach. Finally, as to the chapter 93A claims, the facts alleged fail to raise any plausible inference that Gregory Botsivales was acting on his own behalf rather than as an agent for Arista in blackballing Adelphia (or in the other misconduct alleged). Adelphia's conclusory allegations that the individual defendants acted "in their individual capacity" cannot suffice. Iqbal, 556 U.S. at 678-79.

Adelphia seeks to pierce the corporate veil and apply Arista's liability to the individual defendants. But the equitable doctrine of corporate disregard is appropriate only in unusual circumstances. Scott v. NG U.S. 1, Inc., 881 N.E.2d 1125, 1132 (Mass. 2008). Adelphia argues that disregarding the corporate form is appropriate here because the individual defendants used Arista to commit a fraud. See Att'y Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000) (listing "use of the corporation in promoting fraud" as one of twelve factors that favor piercing the corporate veil). But the mere fact that Arista is a corporate person accused of fraud does not justify piercing the veil. Adelphia does not allege any facts showing that the individual defendants fraudulently abused Arista's corporate form or its limited liability. Moreover, Adelphia makes no attempt to satisfy any of the other eleven factors in the test for whether to pierce the corporate veil. See id. On the present record, it would be wholly

inappropriate to impute Arista's liability to the individual defendants.

Adelphia's claims against the individual defendants are therefore dismissed.

## B. Claims Against Arista

Arista moves to dismiss the fraud claims, certain contract and implied covenant of good faith claims, and the Chapter 93A claims.

### 1. Fraud

As noted above, Adelphia's claims for fraud rest on two grounds. First, Adelphia alleges that in negotiating the 2006 contract, Arista fraudulently promised to hire two civil engineers and to develop ten sites per year. Second, it alleges that Arista manipulated its financial records to pay Adelphia less than its 25% interest was worth for one of the developed properties.

As to the first ground, Arista argues that it cannot be liable for a promise about future conduct. But "a statement that is promissory in nature may be actionable if there is no intent to perform the promise at the time the statement is made." In re Access Cardiosystems, Inc., 404 B.R. 593, 642 n.67 (Bankr. D. Mass. 2009); see also Barrett Assocs. v. Aronson, 190 N.E.2d 867, 868 (Mass. 1963); 37 Am. Jur. 2d Fraud and Deceit § 94 (West 2013). The amended complaint alleges that Arista's promises were "false misrepresentations," Docket # 7 ("Compl.") ¶ 45, which implies Arista had no intent to perform them. If so, the promises are actionable.

Arista also contends that the Massachusetts statute of frauds, Mass. Gen. Laws ch. 259, § 1, bars a fraud claim based on these oral promises. That is mistaken. The statute of frauds bars certain contract claims. It does not affect fraud claims.

Finally, Arista argues that Adelphia has failed to plead its fraud claims with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") That argument fails as to the first ground Adelphia asserts, because Adelphia alleges in detail where the oral promises were made, when they were made, who made them, and what they said. See Compl. ¶¶ 16, 17, 45; see Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004) (in fraud cases, plaintiff must "specify the who, what, where, and when of the allegedly false or fraudulent representation").

However, Adelphia has failed to plead the second ground for its fraud claim with particularity. It does not allege specific facts about the manipulation of Arista's financial records. It does not describe which specific numbers were manipulated, or when and where Arista gave out the false information. Therefore, Rule 9(b) requires dismissing Adelphia's claim to the extent it relies on the alleged manipulation of Arista's financial records.

### 2. Breach of Contract

Adelphia asserts seven breach of contract claims in Count II of the amended complaint. Arista moves to dismiss four of them.

#### a. Count II.B

Count II.B alleges that Arista breached its contract with Adelphia by failing to pay Adelphia for its 25% interest in the single purpose entities that owned the ten properties developed under the contract. Arista argues Adelphia has failed to state a claim here because the amended complaint does not allege that any such single

7

purpose entities were created before the contract was terminated. But that allegation is not necessary to Adelphia's case, since the parties' obligations as to these sites continued even after the contract was terminated. See Contract ¶ 7. Furthermore, Adelphia does allege that the single purpose entities were eventually created, since it alleges they received rents and cash from sales of the properties. Arista's argument therefore fails.

### b. Counts II.E and II.F

Counts II.E and II.F allege breach of contract claims based on Arista's oral promises, made when the 2006 contract was signed, to hire two engineers and develop ten sites per year. Arista argues that these claims must be dismissed under the Massachusetts statute of frauds. As relevant here, that statute bars any action based on an oral contract "for the sale of lands, tenements or hereditaments or of any interest in or concerning them," or based on an oral contract "that is not to be performed within one year from the making thereof." Mass. Gen. Laws. ch. 259, § 1. But the oral promises asserted by Adelphia are outside the scope of the statute of frauds. Neither a promise to hire engineers nor a promise to develop land is a contract for the sale of lands. See In re Northwood Properties, 509 F.3d 15, 24 (1st Cir. 2007). Likewise, neither promise had a set end date, meaning neither promise necessarily extended for more than one year. See Loan Modification Grp. v. Reed, 694 F.3d 145, 150 (1st Cir. 2012); Coughlin v. McGrath, 4 N.E.2d 319, 323 (Mass. 1936) (no statute of frauds issue where "the parties had agreed upon no definite time for the duration of the partnership"). As such, neither promise falls under either of the asserted prongs of the

Massachusetts statute of frauds.

Arista also briefly argues that the asserted oral promises contradict paragraph 13 of the written contract, which states that "nothing provided herein shall compel [Arista] to proceed with a project or site (for purchase or development) if, in the sole opinion and exclusive judgment of [Arista], the project is not viable, saleable, or financeable." Contract ¶ 13. But there is certainly no contradiction between this clause and a promise to hire two engineers. Nor is there a contradiction between this clause and a promise to develop ten sites a year. The asserted promise to develop ten sites a year does not abridge Arista's right under the written contract to reject any particular site it considers unsuitable. Arista's arguments therefore fail here as well.

### c. Count II.G

In Count II.G, Adelphia alleges that Arista failed to develop twenty-one properties that Adelphia offered it. Adelphia further alleges that three of those properties were subsequently developed into commercial drugstores.

Arista again points to paragraph 13 of the contract, which allows it to reject any site if "in [its] sole opinion and exclusive judgment" it considers the site "not viable, saleable or financeable." Contract ¶ 13. But as Adelphia points out, Arista's discretion under this clause is not completely unlimited; it may only reject sites that it genuinely considers "not viable, saleable, or financeable." Given that three of the sites were subsequently developed into pharmacies like those the contract envisioned, Adelphia has plausibly alleged that Arista refused to develop the twenty-one properties at issue without finding them "not viable, saleable or financeable." Cf. Seaboard Sur. Co. v.

Dale Constr. Co., 230 F.2d 625, 630 (1st Cir. 1956) (where contract allowed one party to take possession "whenever, in its sole opinion, such action is desirable or necessary," the question remained whether that party believed in good faith the action was desirable or necessary). If so—if Arista rejected the properties for some other reason—then Arista breached the contract. Dismissal thus is not warranted.

### 3. Breach of the Implied Covenant of Good Faith

Arista has also moved to dismiss some of Adelphia's claims under the implied covenant of good faith, namely those that correspond with the contract claims discussed above. For the reasons already given, the contract claims survive. The implied covenant claims survive along with them.

### 4. Chapter 93A

Finally, Arista moves to dismiss Adelphia's Chapter 93A claim based on the statute of limitations. As the statute of limitations is an affirmative defense, such dismissal is only appropriate if the facts establishing the defense are clear on the face of Adelphia's pleadings. Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). But here, it is not at all clear on the face of the amended complaint that the statute of limitations has run. The original complaint was filed on March 15, 2012; as Chapter 93A claims are governed by a four-year statute of limitations, see Mass. Gen. Laws ch. 260, § 5A, Adelphia's suit is timely if its claim accrued after March 15, 2008.

Adelphia alleges that beginning in 2008, Arista "blackballed" Adelphia, preventing it from developing new properties for commercial drugstore chains. On the

face of the complaint, it is not clear whether the alleged "blackballing" began before or after March 15, 2008. As such, dismissal of this claim on statute of limitation grounds would be inappropriate.

Adelphia also alleges that the other facts discussed above—the alleged fraud and various breaches of contract—provide a further basis for its Chapter 93A claim. It is unclear when much of that alleged misconduct occurred, and so unclear when any Chapter 93A claim premised on that conduct would accrue. For instance, Arista could not have failed to pay Adelphia a finder's fee, or failed to pay Adelphia for its 25% interest in a particular property, until the property in question was actually developed. But the complaint does not specify when the various properties were developed and sold. The facts underlying Arista's statute of limitations argument therefore remain unclear, meaning that dismissal is not available on that ground.

## IV. Conclusion

Defendants' motion to dismiss the amended complaint (Docket # 9) is ALLOWED IN PART and DENIED IN PART. All claims against Gregory Botsivales, Harry Botsivales, and Scott Weymouth are DISMISSED. In addition, Count I is DISMISSED to the extent it rests upon allegations that Arista manipulated its financial records.

Defendants' motion to dismiss the original complaint (Docket # 8) is DENIED AS MOOT.

    March 12, 2013                                    /s/Rya W. Zobel

DATE                                                                                          RYA W. ZOBEL
                                                                              UNITED STATES DISTRICT JUDGE