UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADELPHIA AGIOS DEMETRIOS, LLC, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
|     v. | ) |
| | ) |
| ARISTA DEVELOPMENT, LLC, | ) |
| GREGORY BOTSIVALES, HARRY | )   Case No. 1:12-CV-10486-RWZ |
| BOTSIVALES, AND SCOTT WEYMOUTH, | ) |
| | ) |
|     Defendants/Third Party Plaintiffs | ) |
| | ) |
|     v. | ) |
| | ) |
| JOHN GRAMMAS, | ) |
| | ) |
|     Third Party Defendant | ) |
| | ) |

**ANSWER, COUNTERCLAIMS, AND THIRD PARTY COMPLAINT
OF DEFENDANTS/THIRD PARTY PLAINTIFFS
ARISTA DEVELOPMENT, LLC, AND GREGORY BOTSIVALES**

Defendants Arista Development, LLC ("Arista") and Gregory Botsivales[1]

("Defendants") object to the plaintiff's complaint in its entirety insofar as it does not constitute

a short and plain statement of the claims as required under Fed. R. Civ. P. 8.  Without

waiving this objection, Defendants hereby respond as follows to the corresponding paragraphs

of the First Amended Complaint, using the same format and paragraph numbering, and further

stating that Defendants use of the same format and paragraph numbering does not constitute an

admission by defendants either of the headings provided by plaintiff or the claims thereunder.

---

[1] By order of this Court dated March 12, 2013, all claims and counts against the individual defendants, Gregory Botsivales, Harry Botsivales, and Scott Weymouth, have been dismissed from this action, except as to the claims pursuant to G.L. c. 93A in Count 3[sic] against Arista and Gregory Botsivales (See Order dated April 16, 2013).

## "PARTIES"

1.      Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph.

2.      Denied that the phrase "dealing in real estate development" is a complete and accurate description of Arista's business.

3.      Admitted that Gregory Botsivales remains a defendant in this case only as to the claims under G.L. c. 93A, and further stating that all other claims against Mr. Botsivales have been dismissed.  Otherwise, denied.

4.      Denied that Harry Botsivales is a defendant insofar as this Court dismissed all claims against Mr. Botsivales.  Otherwise, admitted.

5.      Denied that Scott Weymouth is a defendant insofar as this Court dismissed all claims against Mr. Weymouth.  Otherwise, denied.

## "JURISDICTION AND VENUE"

6.      The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

7.      The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

8.      The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

## "NATURE OF THE ACTION"

9.      The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

## "FACTS COMMON TO ALL CLAIMS"

### "Plaintiff and Defendants' Relationship Prior to Cause of Action"

10.     Admitted that Arista is a Massachusetts limited liability company and that Gregory Botsivales is manager.  Otherwise, denied.

11.     Admitted that Grammas is the manager of Adelphia, and further stating that Grammas also acted in his individual capacity, both expressly and by conduct, at all times. Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of this paragraph.

12.     Admitted that Grammas met with Scott Weymouth, a representative of Arista, sometime in 2004, to discuss property in Epping, NH owned by Grammas, for which he claimed to have obtained an approved Walgreen's real estate committee deal to develop a retail store on the property.  Arista further states that Grammas arranged the meeting with Mr. Weymouth under false pretenses, claiming that he wanted to sell the Epping, NH property to Arista, and that, in fact, Grammas, who had no experience in developing a property for Walgreen's, intended to obtain commercially sensitive information, intelligence, and contacts for developing properties for Walgreen's from Mr. Weymouth in order to develop the Epping, NH property himself, and that Grammas did not ever intend to sell the property to Arista. Otherwise, denied.

13.     Admitted that on or about September 24, 2004, plaintiff and Arista entered into a Memorandum of Understanding ("2004 MOU") signed by Arista's manager, Gregory Botsivales, and by Grammas as both the manager of Adelphia and in his individual capacity, and further stating that the 2004 MOU speaks for itself.  Otherwise, denied.

14.    Admitted that Grammas terminated the 2004 MOU by letter from his attorney, Scott LaPointe, dated December 15, 2004, only three months after Grammas signed the 2004 MOU, and that these eight sites were listed in the termination letter.  Otherwise, denied.

**"Discussions Between Plaintiff and Defendants Before Signing 2006 Contract"**

15.    Admitted that plaintiff and Arista entered into a new memorandum of understanding in 2006 ("2006 MOU") after Grammas terminated the 2004 MOU just three months after signing it.  Otherwise, denied.

**"Negotiations Leading to Signing the 2006 Contract"**

16.    Admitted that representatives of Arista met with Grammas at a Legal Seafoods restaurant in Burlington, MA, and further stating that it was Grammas, not Arista, who contacted Arista and arranged the meeting in order to try to induce Arista in an unfair and deceptive manner, after he terminated the 2004 MOU after just three months, into re-entering a relationship with him and Adelphia, because Grammas did not have the necessary expertise, experience, or contacts for developing properties for Walgreen's.  Otherwise, denied.

17.    Denied.

**"Terms of the 2006 Contract"**

18.    Admitted that on or about March 16, 2006, Adelphia and Arista entered into the 2006 MOU, signed by their respective managers, and further stating defendants are without knowledge or information sufficient to admit or deny the location where the 2006 MOU was signed, and the 2006 MOU speaks for itself.  Otherwise, denied.

19.    Denied.

20.    Denied, and further stating that the 2006 MOU speaks for itself.

21.    Denied, and further stating that the 2006 MOU speaks for itself.

22.     Admitted that the parties could terminate the 2006 MOU with 60 days written notice, and further stating, upon information and belief, that Grammas intentionally used this provision in an unfair and deceptive manner by terminating the 2006 MOU in a matter of months (similar to his termination of the 2004 MOU), without having complied with his obligations, in order to interfere with Arista's future business opportunities and circumvent the 2006 MOU, and  the 2006 MOU speaks for itself.  Otherwise, denied.

23.     Denied.

24.     Denied, and further stating the 2006 MOU speaks for itself.

25.     Denied, and further stating the 2006 MOU speaks for itself.

26.     Admitted that on or about October 6, 2006, just six months after executing the 2006 MOU, Grammas terminated the 2006 MOU, and that his attorney, Karyn Forbes, sent two letters to Arista dated October 6, 2006, one concerning the termination, and the other concerning the Hampstead, NH property, and further stating, upon information and belief, that Grammas terminated the 2006 MOU without having complied with his substantial obligations thereunder, similar to his termination of the 2004 MOU, in an unfair and deceptive manner in order to interfere with Arista's future business opportunities and circumvent the 2006 MOU, and the letters and the 2006 MOU speak for themselves.  Otherwise, denied.

**"Sales Profits Earned by the Joint Venture Under the 2006 Contract"**

27.     Denied.

28.     Denied.

29.     Admitted as to the definition of "soft costs," otherwise, denied.

30.     Denied.

31.     Denied.

32.    Denied.

**"Lease Profits Earned by the Joint Venture Under the 2006 Contract"**

33.    Denied

34.    Denied.

35.    Denied.

**"Plaintiff's Market Development Overhead Fee Under 2006 Contract"**

36.    Denied.

37.    Denied.

38.    Denied.

**"Properties Defendant Arista Failed to Develop Under the 2006 Contract"**

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

**COUNT I**
**FRAUD**
**ALLEGED AGAINST ALL DEFENDANTS**

44.    Defendants incorporate their responses to ¶¶ 1-43 as if fully set forth herein.

45-47.  Defendants state that Count I has been dismissed by this Court as to all defendants.  Accordingly, no answer is required to ¶¶ 45-47.  To the extent an answer is required, the allegations are denied.

**COUNT II**
**BREACH OF CONTRACT**

## ALLEGED AGAINST ALL DEFENDANTS[2]

48.     Arista incorporates its responses to ¶¶ 1-47 as if fully set forth herein.

### A. Market Development Overhead Fee Due to Plaintiff:

49.     Denied, and further stating that the 2006 MOU speaks for itself.

50.     Denied.

51.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

52.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

### B.  25% Interest in Joint Venture's Property Due to Plaintiff:

53.     Arista incorporates its responses to ¶¶ 1-52 as if fully set forth herein.

54.     Denied, and further stating the 2006 MOU speaks for itself.

55.     Denied.

56.     Denied.

57.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

### C.  Defendants' Failure to Provide Plaintiff with Monthly Updates:

58.     Arista incorporates its responses to ¶¶ 1-57 as if fully set forth herein.

59.     Denied, and further stating the 2006 MOU speaks for itself.

60.     Denied.

---

[2] Count II has been dismissed as to the individual defendants, thus no answer by them is required. To the extent an answer is required, the allegations of Count II are denied.

61.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

62.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

### D.  Defendants' Failure to Provide Plaintiff with Access to Arista's Books, Records, Correspondence, and Other Documents

63.     Arista incorporates its responses to ¶¶ 1-62 as if fully set forth herein.

64.     Denied, and further stating that the 2006 MOU speaks for itself.

65.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

66.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

67.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

### E.  Defendants' Failure to Hire Two Civil Engineers

68.     Arista incorporates its responses to ¶¶ 1-67 as if fully set forth herein.

69.     Denied.

70.     Denied.

71.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

72.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

### F.  Defendants' Failure to Work with Plaintiff to Develop Ten Sites Per Year

73.     Arista incorporates its responses to ¶¶ 1-72 as if fully set forth herein.

74.     Denied.

75.     Denied.

76.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

### G.  Defendants' Failure to Develop Sites it Accepted Under 2006 Contract and Its Surviving Terms

77.     Arista incorporates its responses to ¶¶ 1-76 as if fully set forth herein.

78.     Denied.

79.     Denied.

80.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

81.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

### COUNT III
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ALLEGED AGAINST ALL DEFENDANTS[3]

82.     Arista incorporates its responses to ¶¶ 1-81 as if fully set forth herein.

83.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

84.     Denied.

### COUNT III [SIC]
### VIOLATION OF G.L. c. 93A, § 11
### ALLEGED AGAINST ARISTA AND GREGORY BOTSIVALES[4]

---

[3] Count III has been dismissed as to the individual defendants, thus no answer by them is required. To the extent an answer is required, the allegations of Count III are denied.

85.     Arista and Gregory Botsivales incorporate their responses to ¶¶ 1-84 as if fully set forth herein.

86.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

87.     The allegations in this paragraph constitute legal conclusions to which no response is required, and further stating G.L. c. 93A, § 3 speaks for itself.  To the extent a response is required, denied.

88.     The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required, and further stating G.L. c. 93A, § 1 speaks for itself. To the extent a response is required, denied.

### A.  Unfair or deceptive trade or practices

89.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

90.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

### B.  Unfair methods of competition

91.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

92.     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

---

[4] Count III [sic] has been dismissed as to the individual defendants Harry Botsivales and Scott Weymouth, thus no answer by them is required. To the extent an answer is required, the allegations of Count III [sic] are denied.

93.    Denied.

94.    Denied.

95.    Denied.

## DAMAGES

96.    Arista and Gregory Botsivales incorporate their responses to ¶¶ 1-95 as if fully set forth herein.

97.    The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

98.    The allegations in this paragraph constitute legal conclusions and a request for relief to which no response is required.  To the extent a response is required, denied.

No response is required to the final paragraph of plaintiff's complaint, which constitutes a request for relief.  To the extent a response is required, denied.

## <u>AFFIRMATIVE DEFENSES</u>

If plaintiff suffered injury as is alleged, which is denied, Arista and Gregory Botsivales as to Count 3 [sic] (93A) plead the following affirmative defenses:

### <u>First Affirmative Defense</u>

Plaintiff has failed to state a claim upon which relief can be granted.

### <u>Second Affirmative Defense</u>

Plaintiff's claims are barred by the statute of limitations.

### <u>Third Affirmative Defense</u>

Plaintiff's claims are barred by the statute of frauds.

### <u>Fourth Affirmative Defense</u>

Plaintiff has failed to plead allegations of fraud with requisite particularity.

<u>Fifth Affirmative Defense</u>

Plaintiff's claims are barred by failure to use reasonable efforts to avert harm or avoid loss.

<u>Sixth Affirmative Defense</u>

Plaintiff's claims are barred by the equitable doctrines of unclean hands, waiver and estoppel.

<u>Seventh Affirmative Defense</u>

Plaintiff's claims are barred for failure to mitigate damages.

<u>Eighth Affirmative Defense</u>

Plaintiff's claims are barred by license and/or consent.

<u>Ninth Affirmative Defense</u>

Plaintiff's claims are barred by Arista's sole and exclusive discretion and judgment under the 2004 and 2006 MOUs.

<u>Tenth Affirmative Defense</u>

All actions by Arista were taken in good faith and in accordance with the agreements with plaintiff.

<u>Eleventh Affirmative Defense</u>

Plaintiff's complaint fails to meet the requirement of Fed.R.Civ.P. 8 of a short and plain statement of the claims.

<u>Twelfth Affirmative Defense</u>

Plaintiff's claims are wholly insubstantial, frivolous, and not advanced in good faith.

## PRAYER FOR RELIEF

WHEREFORE, Arista and Gregory Botsivales request that the Court dismiss these claims against them, find plaintiff's claims to be wholly insubstantial, frivolous, and not advanced in good faith and award their attorney's fees and costs in defending against these claims pursuant to G.L. c. 231, § 6F, and issue such other and further relief as justice requires.

## COUNTERCLAIMS AGAINST ADELPHIA AGIOS DEMETRIOS, LLC, AND THIRD PARTY COMPLAINT AGAINST JOHN GRAMMAS, INDIVIDUALLY

### Parties

1.      Plaintiff Arista Development, LLC ("Arista") is a Massachusetts limited liability company with a principal place of business at 450 Station Avenue, Yarmouth, MA.

2.      Defendant-in-counterclaim Adelphia Agios Demetrios, LLC ("Adelphia") is a New Hampshire limited liability company with a principal office located at 39 Freetown Road, Raymond, NH.

3.      Upon information and belief, third party defendant John Grammas is an individual residing at either 33 or 39 Freetown Road, Raymond, NH.

### Facts

4.      Arista's business, among other things, is to develop properties suitable for Walgreen's retail pharmacies.  It does not develop properties for other retail pharmacies such as CVS or Rite-Aid.

5.      At all relevant times, Grammas knew and was aware that Arista developed properties for Walgreen's retail pharmacies, and not other retail pharmacies such as CVS or Rite Aid.

6.      In 2004, Scott Weymouth on behalf of Arista met with Grammas at Grammas' request to discuss a property that Grammas owned in Epping, NH.  Mr. Weymouth was introduced to Grammas through a real estate broker who knew Mr. Weymouth.

7.      Grammas claimed he had a site approved by Walgreen's real estate committee to develop the Epping, NH property with a Walgreen's retail pharmacy.

8.      Grammas had never developed a Walgreen's and did not have the necessary expertise or knowledge on developing a property for Walgreen's.

9.      Grammas arranged the meeting with Mr. Weymouth under false pretenses, claiming that he wanted to sell the Epping, NH property to Arista, knowing that Arista had knowledge and expertise in developing properties for Walgreen's and intending to obtain valuable, commercially sensitive information, intelligence, and contacts from Mr. Weymouth in order to develop the Epping property himself with a Walgreen's retail pharmacy.

10.     At the meeting, Grammas took in the information conveyed by Mr. Weymouth on developing properties with Walgreen's stores, and then ultimately developed the Epping, NH property himself.

11.     Grammas never offered to sell the Epping, NH property to Arista.

*2004 Memorandum of Understanding*

12.     Sometime later in 2004, before Arista was aware of Grammas' pretext for meeting with Mr. Weymouth about the Epping, NH property, Grammas contacted Arista and indicated that he had several properties that would be appropriate for development by Arista for Walgreen's retail pharmacies.

13.     In or about September 2004, Adelphia, Grammas in his individual capacity, and Arista entered into a Memorandum of Understanding ("2004 MOU") in which Adelphia was to

identify and present properties to Arista that were specifically suitable for development for Walgreen's retail pharmacies, as well as to undertake other substantial efforts and obligations designed to result in development of these properties for Walgreen's retail pharmacies.

14.     Grammas represented to Arista that he had expertise, experience, knowledge and contacts, including an established network of brokers, for locating properties suitable for development for Walgreen's retail pharmacies.

15.     Arista entered into the 2004 MOU relying on these representations by Grammas concerning his and/or Adelphia's abilities, expertise, experience, knowledge, and contacts in locating suitable properties for development with Walgreen's retail pharmacies, and their undertaking other substantial efforts and obligations designed to result in development of these properties, including ¶¶ 13-14, above, which representations turned out to be false and misleading.

16.     By letter dated December 15, 2004, Grammas purported to terminate the 2004 MOU, just three months after signing it, without having first met his substantial obligations under the 2004 MOU.

*Breach of the 2004 MOU by Grammas and Adelphia*

17.     During the brief three-month period after the 2004 MOU was executed and before it was terminated by Grammas and Adelphia in December 2004, Grammas and Adelphia failed to substantially meet their obligations under the 2004 MOU.  In fact, after the termination, Grammas took no further action and made no efforts whatsoever to meet his continuing post-termination obligations under the 2004 MOU.

18.     Contrary to express representations made to Arista that it relied on in entering the 2004 MOU, Adelphia and Grammas had no network of brokers for locating properties.

19.     Only two of the eight sites listed in the letter terminating the 2004 MOU were ultimately acquired and developed by Arista for Walgreen's retail pharmacies: Hudson, NH (Derry Road); and Hampstead, NH (Route 111/121 aka Sandown Road).  While these properties were developed by Arista, both Grammas and Adelphia failed to substantially meet their obligations under 2004 MOU, and their continuing obligations after the termination of the 2004 MOU.

20.     Adelphia and Grammas were paid a preferred payment for these two properties.

21.     Adelphia and Grammas were not entitled to these preferred payments in light of their failure to substantially meet their obligations under the 2004 MOU, and their continuing obligations after the termination of the 2004 MOU.

22.     By terminating the 2004 MOU after only three months, Grammas was able to start the running of the one-year post-termination period concerning his and Adelphia's post-termination obligations, and thereby circumventing the intent of the 2004 MOU and terminating Arista's interest as expeditiously as possible in order to exploit the opportunities for him to offer these properties on his own or with others for development with Walgreen's, CVS or Rite Aid after the conclusion of the one-year post termination period.

*2006 Memorandum of Understanding*

23.     Sometime after Grammas terminated the 2004 MOU, Grammas again contacted representatives of Arista and ultimately convinced them to meet with him, in spite of his and Adelphia's previous failure to substantially meet their obligations under the 2004 MOU and continuing obligations after the terminations, by making specific representations of the substantial obligations that he and his team at Adelphia would undertake in order to assist in development of these properties for Walgreen's retail pharmacies.

24.     Again, Grammas made false and misleading representations concerning his and Adelphia's abilities, expertise, knowledge, experience, and willingness in developing properties for Walgreen's retail pharmacies, including that he would present so many <u>viable sites to Arista for Walgreen's approval</u> that Arista's in-house engineers would be overwhelmed and Arista would need to hire additional engineers to handle all the work.

25.     Among other things, Grammas also represented to Arista that he and/or Adelphia would have other responsibilities after indentifying and presenting suitable locations, including but not limited to reviewing municipal records to determine property ownership, researching zoning requirements, meeting with town planners to discuss retail opportunities in general and as to the specified properties, meeting with property owners concerning purchase of the properties, preparation of formal market surveys using specified Walgreen's criteria concerning location, traffic, land issues, and price, preparation of preliminary site plans, participating in reaching agreements with the property owners to purchase the properties, and taking the lead in the permitting process for these properties, including but not limited to representing the developer at all necessary meetings and public hearings with Town permitting authorities.

26.     Grammas also represented to Arista that his personnel ("team) consisted of himself, Jim Grammas, Mike Ficara, and Hope Thompson.

27.     Grammas also represented to Arista, again, that he had an extensive network of brokers.

28.     Grammas also agreed that he and Adelphia would promptly identify to Arista all potential development sites, and that Grammas personally or an agent on his behalf would keep

Arista informed on a regular basis of the status of any sites so identified, and that he would provide contact information where he could always be reached by Arista if necessary.

29.     Arista relied on these false and misleading representations made by Grammas both individually and in his capacity as manager of Adelphia in order to induce Arista into agreeing in or about March 26, 2006 to enter a second Memorandum of Understanding ("2006 MOU").

30.     Neither Adelphia nor Grammas were obligated under the 2006 MOU to contribute equity to any proposed project, nor did they.

*Breach of 2006 MOU*

31.     Almost immediately after executing the 2006 MOU, it became apparent to Arista that Grammas and Adelphia did not possess the requisite abilities, expertise, knowledge, experience, and willingness to meet their substantial obligations under the 2006 MOU.

32.     Upon information and belief, after signing the 2006 MOU Grammas departed for Greece where he remained for an extended period of time, and was unwilling and/or incapable of meeting his and Adelphia's substantial obligations under the 2006 MOU.

33.     Grammas and/or Adelphia failed and/or refused to appoint an agent or representative to act on his behalf during his extended trips out of the country, or to return phone calls from Arista or otherwise communicate with Arista concerning potential development sites.

34.     While Arista paid Adelphia's team under the 2006 MOU, they did not substantially meet (in Grammas' extended absence) Adelphia's substantial obligations and representations under the 2006 MOU.

35.     Grammas and/or Adelphia failed to reasonably negotiate and sign an operating agreement for the Hampstead, NH property as required under the 2006 MOU.

36.     Upon information and belief, after identifying the Sanford, ME site to Arista, Grammas later attempted to circumvent the terms of the 2006 MOU and interfere with Arista's development efforts by attempting to put the same property under his control in order to develop the property on his own or with others, after having terminated the 2006 MOU after only a few months in order to terminate Arista's interests as expeditiously as possible.

37.     As with his termination of the 2004 MOU just three months after its execution, Grammas terminated the 2006 MOU just six months after its execution without Grammas and/or Adelphia having met their substantial obligations under these agreements.

*Defamation by Grammas and Adelphia in Order to Damage Arista and Extort Payment*

38.     The vicious, false, and defamatory allegations in ¶¶ 15 and 92 of Adelphia's complaint can have been made by Grammas and Adelphia solely to exert pressure on Arista, its manager, and other representatives in a blatant effort to harm Arista's longstanding and excellent reputation as a Walgreen's developer and it relationship with Walgreen's, to damage Arista's reputation within the commercial development community, and to extort payment from Arista.

39.     In addition, Grammas and Adelphia have made false allegations in ¶¶ 40-41 that Arista developed three properties with CVS and Rite-Aid pharmacies, with full knowledge and awareness that Arista did not develop these three properties, and at all relevant times developed properties exclusively for Walgreen's and no other retail pharmacy.

40.     Due to the publication of the First Amended Complaint on the internet, these false, vicious, and defamatory statements have been published by Grammas and Adelphia to

the entire world, and specifically to persons and entities involved in commercial real estate development and the retail pharmacy industry in general, and Walgreen's specifically, including but not limited to Arista's business contacts, partners, referral sources, and all other persons and entities with whom Arista has agreements or other business.

**COUNT I**
**BREACH OF 2004 AND 2006 MOUs**

41.     Arista repeats the allegations in paragraphs 1- 40, above, which are incorporated herein by reference.

42.     Arista and Adelphia and Grammas had agreements under which Grammas and Adelphia would undertake substantial efforts and obligations designed to result in development of properties for Walgreen's retail pharmacies.

43.     Adelphia and Grammas failed and/or refused to perform their obligations under the 2004 and 2006 MOUs, and their continuing obligations after the termination of the 2004 and 2006 MOUs.

44.     As a result of Adelphia's and Grammas' breach of the 2004 and 2006 MOUs, Arista has suffered damages in an amount to be proven at trial.

**COUNT II**
**FRAUD AND MISREPRESENTATION**

45.     Arista repeats the allegations in ¶¶ 1- 44, above, which are incorporated herein by reference.

46.     Both individually and on behalf of Adelphia, Grammas made false and/or misleading statements concerning his abilities, expertise, knowledge, experience, availability,

and willingness to undertake substantial obligations under the 2004 and 2006 MOUs in order to fraudulently induce Arista into entering the 2004 and 2006 MOUs

47.     Both individually and on behalf of Adelphia, Grammas made false and/or misleading statements in order to circumvent the terms of the 2004 and 2006 MOUs.

48.     Both individually and on behalf of Adelphia, Grammas made false and/or misleading statements in order to interfere with Arista's future business opportunities.

49.     Arista relied upon these fraudulent, false and/or misleading statements in entering into the 2004 and 2006 MOUs with Grammas and Adelphia to its detriment.

50.     Arista has suffered damages as a result of Grammas' and Adelphia's fraud and misrepresentation.

## COUNT III
## DEFAMATION

51.     Arista repeats the allegations in ¶¶ 1- 50, above, which are incorporated herein by reference.

52.     Grammas and Adelphia have made vicious, false, and defamatory statements in ¶¶ 15, 40-41, and 92 of Adelphia's Amended Complaint concerning Arista and its manager, Gregory Botsivales, and representative Scott Weymouth for the purpose of damaging Arista's longstanding excellent reputation as a developer of Walgreen's retail pharmacies specifically, and commercial real estate in general, and of extorting payment from Arista, to which they are not entitled.

53.     These vicious, false, and defamatory statements have been published to the entire world by virtue of publication of the Amended Complaint on the internet, which can be accessed by anyone using the term "Arista" in a search engine.

54.     As a result of these vicious, false, and defamatory statements, the reputations of Arista, Mr. Botsivales, and Mr. Weymouth have been maligned and damaged, particularly concerning real estate development, and the retail pharmacy development in particular, in an amount to be proven at trial.

## COUNT IV
## Extortion and Malicious Prosecution

55.     Arista repeats the allegations in ¶¶ 1- 54, above, which are incorporated herein by reference.

56.     Grammas and Adelphia caused this complaint to be filed for the purpose of publishing, vicious, false and defamatory remarks about Arista and its representatives in order to interfere with its advantageous business relationship to try to obtain an undue advantage by which it would extort and otherwise seek payment from Arista.

57.     As a result of Grammas' and Adelphia's abuse of process for the ulterior or illegitimate purpose of coercing Arista into paying Grammas and Adelphia, and to interfere with Arista's business relationships, Arista has been damaged, including but not limited to incurring attorney's fees and costs of defending against this wholly insubstantial, frivolous and bad faith action, in an amount to be proven at trial.

## COUNT V
## Unjust Enrichment

58.     Arista repeats the allegations in ¶¶ 1- 57, above, which are incorporated herein by reference.

59.     Arista paid Grammas and Adelphia under the 2004 and 2006 MOUs.

60.     Grammas and Adelphia failed to meet their substantial obligations under the 2004 and 2006 MOUs, and their continuing obligations after termination of the 2004 and 2006 MOUs.

61.     Grammas and Adelphia accepted and retained payment under the 2004 and 2006 MOUs even though they breached the 2004 and 2006 MOUs.

62.     Grammas and Adelphia have been unjustly enriched, having received payment from Arista without meeting their substantial obligations under the 2004 and 2006 MOUs.

## PRAYER FOR RELIEF

WHEREFORE, Arista requests that this Court:

1.     Enter judgment and award damages in favor of Arista in an amount to be determined;

2.     Award Arista its attorney's fees and costs; and

3.     Issue such other and further relief as justice requires.

## REQUEST FOR JURY TRIAL

Arista requests a jury on all claims so triable.

ARISTA DEVELOPMENT, LLC, and
GREGORY BOTSIVALES,

By their attorneys,


/s/ Julie Pruitt Barry
Julie Pruitt Barry (BBO #563018)
jpbarry@nutter.com
Darah L. Schofield (BBO# 663219)
dschofield@nutter.com
Nutter, McClennen & Fish, LLP
Seaport West, 155 Seaport Blvd.
Boston, MA 02210
Telephone:     (617) 439-2000
Dated:  April 26, 2013               Facsimile:     (617) 310-9000
2192503.1