UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADELPHIA AGIOS DEMETRIOS, LLC,  )<br>  )<br>    Plaintiff/Defendant-in-Counterclaim  )<br>v.  )<br>  )<br>ARISTA DEVELOPMENT, LLC and  )<br>GREGORY BOTSIVALES,  )<br>  )<br>    Defendants/Plaintiff-in-  )<br>    Counterclaim/Third-Party-Plaintiff  )<br>  )<br>v.  )<br>  )<br>JOHN GRAMMAS  )<br>    Third-Party Defendant  )  | CASE NO: 1:12-CV-10486-RWZ |

**OPPOSITION OF ARISTA DEVELOPMENT, LLC, AND GREGORY BOTSIVALES
TO MOTION TO DISMISS COUNTERCLAIMS AGAINST ADELPHIA AGIOS
DEMETRIOS, LLC, AND THIRD PARTY COMPLAINT AGAINST JOHN GRAMMAS**

As set forth in the previous opposition brief of Arista Development, LLC ("Arista") and Gregory Botsivales[1] to the first motion of Adelphia Agios Demetrios, LLC ("Adelphia") to dismiss counterclaims against Adelphia, this action, including the counterclaims and third party complaint against John Grammas,[2] concern a relationship between the parties, which first arose in 2004. At that time Arista, Adelphia and Grammas entered a memorandum ("2004 MOU") outlining their respective obligations concerning prospective development of Walgreen's retail pharmacies. Amended Complaint (Doc. No. 7), ¶ 13. Under the terms of the 2004 MOU, both Adelphia and Grammas had obligations that continued well beyond Grammas' termination of

---

[1] By order of this Court dated March 12, 2013, all claims and counts against the individual defendants, Gregory Botsivales, Harry Botsivales, and Scott Weymouth, have been dismissed from this action, except as to the claims pursuant to G.L. c. 93A against Arista and Gregory Botsivales (See Order dated April 16, 2013). Arista is the sole plaintiff as to the counterclaims against Adelphia and the third party complaint against John Grammas, individually.
[2] Doc. No. 39.

the 2004 MOU only three months after signing it. They breached the 2004 MOU by failing to meet any of those continuing obligations. First Amended Counterclaim and Third Party Complaint (Doc. No. 40) ("Counterclaims & Third Party Complaint"), ¶¶ 17-22. They concealed the breach by first purporting to terminate the agreement, and then approaching Arista and making a number of misrepresentations to induce it into continuing the relationship by entering the second agreement in March 2006 ("the 2006 MOU"). Amended Complaint at ¶¶ 14-15; Counterclaims & Third Party Complaint, ¶¶ 16, 23.

Moreover, after terminating the 2004 MOU, the facts show that Adelphia and Grammas used it as a vehicle to continue a pattern of fraud and misrepresentation towards Arista and to induce Arista to enter into a second memorandum in 2006. Counterclaims & Third Party Complaint, ¶¶ 23-34. To convince Arista to enter the 2006 MOU despite his and Adelphia's previous failure to meet their obligations and continuing obligations under the 2004 MOU, Grammas falsely and explicitly represented that he and Adelphia would undertake substantial obligations in order to assist with the development of properties for Walgreen's retail pharmacies, including that he would present so many viable sites to Arista for Walgreen's approval that Arista would need to hire additional engineers to handle all the work. Id. Shortly after signing the 2006 MOU for Adelphia, however, Grammas left the country, without honoring the substantial obligations, and terminated the MOU just six months after signing it. Id. Adelphia resurfaced six years later in 2012 when it filed this action seeking the preposterous sum of $20 million for doing nothing more than providing a list of addresses for a handful of potential development sites. Id. at ¶¶ 60-61

As set forth below, Arista's counterclaims and third party complaint set forth more than sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). Adelphia and Grammas have failed to set forth a basis for this Court to dismiss Arista's counterclaims and third party complaint. Their motion should be denied.

I. **Construing the Factual Allegations and Drawing All Reasonable Inferences in Arista's Favor, the Counterclaims & Third Party Complaint Set Forth Specific Facts Sufficient to Survive the Motion to Dismiss**

Unlike Adelphia's complaint, the counterclaims and third party complaint sets forth facts that are specifically pled, which "allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These allegations are not bald assertions or legal conclusions. Rather they contain specific facts as to persons, events, locations, and conduct, which are more than sufficient to support the claims. These factual allegations also meet the heightened requirement for pleading fraud, providing facts concerning who, what, where, and when of the fraudulent misrepresentation. Counterclaim & Third Party Complaint, ¶¶ 17-37. *See Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (Rule 9(b) requires pleading who, what, where, and when of fraudulent misrepresentation).

    A. **The Third Party Complaint Against Grammas Contains Sufficient Facts to Survive The Motion to Dismiss**

None of the reasons set forth by Grammas and Adelphia provide a basis for dismissing the third party complaint against Grammas at this stage. The first unavailing argument is that the 2004 MOU (Counts I and II) are barred by the statute of limitations. However, the facts necessary to demonstrate this cannot be determined from the face of the third party complaint. See Trans-Spec Truck Serv. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). Based on the facts as set forth in the third party complaint (¶¶ 17-19, 23-28), the limitations period is

equitably tolled here, where Grammas actively and intentionally hid the fact of harm to Arista and thwarted Arista's attempts to discover the same. See *Patsos v. First Albany Corp.*, 433 Mass. 323, 329 (2001).

Similarly, the third party complaint sets forth facts sufficient to show a plausible claim of breach by Grammas of the 2004 MOU, a copy of which is attached hereto as Exhibit A. Grammas had obligations under the 2004 MOU, which survived its termination. There is no dispute that Grammas was a party and signatory to the 2004 MOU in his individual capacity as to paragraph 7, which states:

> The Partner and/or its brokers will submit property offer status updates periodically (but at least monthly) to Developer indicating sites it has identified as potentially suitable for Developer's purposes, and such lists shall inter alia be conclusive proof of projects or sites which are governed by this Agreement. ***Obligations between the parties regarding these sites and the provisions of Paragraph 6 and 7 shall survive termination of this Agreement.***

(emphasis added).

The plain meaning of the words of the 2004 MOU govern its interpretation under the rules of construction in Massachusetts. See RESTATEMENT, 2d, CONTRACTS § 202(3)(a); *World Species List-Natural Features Registry Institute v. Reading*, 75 Mass. App. Ct. 302, 309 (2009), *rev. den'd*, 455 Mass. 1106 (2009) (interpretation of language in written contract is question of law for court, and if words are plain and free from ambiguity, they must be construed in accordance with their ordinary and usual sense). Grammas' position that his obligations under the agreement did not survive its termination is untenable. Here, the plain language of ¶ 7 confirms that Grammas' obligations regarding "these sites," meaning those sites submitted by Adelphia and/or its brokers, "shall survive the termination of this Agreement." These obligations include all of the obligations recited in the third party complaint at ¶¶ 12-19.

4

Equally unavailing are the arguments in Grammas' motion to dismiss Counts I and II of the third party complaint with regard to the 2006 MOU. Unlike the individuals named by Adelphia in its complaint against Arista, Grammas made explicit representations as to **his** expertise, **his** capacity, and **his** plans to provide specific services and rely on specific networks relative to identifying and developing properties. Counterclaim & Third Party Complaint, ¶¶ 13-14, 18, 23-28. These statements were false misrepresentations upon which Arista relied to its detriment. Id. at ¶ 29. "A statement that is promissory in nature may be actionable if there is no intent to perform the promise at the time the statement is made." *In re Access Cardiosystems, Inc.*, 404 B.R. 593, 642 n.67 (Bankr. D. Mass. 2009; *see also Barrett Assocs. V. Aronson*, 190 N.E.2d 867, 868 (Mass. 1963); 37 Am. Jur. 2d <u>Fraud and Deceit</u> § 94 (West 2013).

Grammas' promises to Arista were false and misleading representations that Grammas had no intent of performing. After inducing Arista to enter the 2006 MOU with these misrepresentations, Grammas left the country and failed or refused to meet the obligations that he actively incurred in connection with the 2006 MOU, or to even respond to any of Arista's communications to him. Id. at ¶¶ 31-34 32. Construing these facts in Arista's favor, they are more than sufficient to set forth a plausible claim of breach of the 2006 MOU.

As to the claims against Grammas for defamation (Count III) and abuse of process (Count IV), Grammas contends that these cannot lie against him individually as it was Adelphia that filed the Amended Complaint. This argument ignores that these claims concern actions that can only have been taken by Grammas individually, under the name and guise of Adelphia, to advance Grammas' wrongful agenda. The false, vicious and defamatory allegations in the Amended Complaint do not concern and can in no way be deemed as

intended to advance the purpose for which Adelphia exists as a corporate entity. Grammas should not be permitted to use Adelphia's corporate name as a shield under such circumstances. There is no reasonable dispute that Grammas is the moving force behind the litigation, the strategy employed in its advancement, and the voice behind these false and defamatory claims asserted.

Finally, the facts in support of the claim for unjust enrichment (Count V) against Grammas are clear and specific as to the payments made by Arista to Grammas. Counterclaim & Third Party Complaint, ¶ 59. A plaintiff states a claim for unjust enrichment by showing (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable. *Stevens v. Thacker*, 550 F. Supp. 2d 161, 165 (D. Mass. 2008); *Vieira v. First American Title Ins. Co.*, 668 F. Supp. 2d 282, 294 (D. Mass. 2009). The claim "is independent of an assertion for damages under a contract, though both claims have as a common basis the contract itself. It is an obligation that arises under quasi contract theory in which an obligation is created by law for reasons of justice." 14 MASS. PRACTICE, SUMMARY OF BASIC LAW § 5.4, Howard J. Alperin (4th Ed., 2012). Such a claim is appropriate where an agreement is too indefinite to be enforced or where no contract is made because each of the parties had a materially different understanding of the terms. *See Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F. 3d 215, 233-234 (1st Cir. 2005).

Arista's claim for unjust enrichment is premised on the fact that Arista furnished payments to Adelphia and Grammas that were retained by Adelphia and Grammas, and for which Arista did not receive reasonable reciprocal value. *Id.* at ¶¶ 12-37. The claim is made

in the alternative, as it must be, because Arista has also asserted contract claims based on the 2004 and 2006 MOUs. As part of this litigation, those agreements may be reformed or set aside as the Court sees fit in resolving the parties' dispute. Under such circumstances, a contract may be implied in law.

    B.    The Counterclaims Against Adelphia Contain Facts Sufficient to Survive the Motion to Dismiss

As set forth in Arista's and Botsivales' first opposition brief,[3] the counterclaims against Adelphia include timely claims for breach of the 2004 and 2006 MOUs, and fraud and misrepresentation (Counts I and II), defamation (Count III) for which Adelphia has no claim of litigation privilege, abuse of process (Count IV),[4] and unjust enrichment (Count V), which is pled in the alternative as expressly allowed under Fed. R. Civ. P. 8. There are ample facts n the counterclaims sufficient to set forth a claim with sufficient plausibility such that they survive the motion to dismiss.

Adelphia's claim that the counterclaims for breach of the 2004 and 2006 MOUs and fraud and misrepresentation should be dismissed as untimely ignores the fact that under the discovery rule – and as an equitable matter – the statute of limitations concerning the 2004 MOU did not begin to run until Arista discovered the harm. Adelphia has the burden of proof on this defense, which it cannot sustain. *See Coastal Oil New England, Inc. v. Citizens Fuels*

---

[3] On May 16, 2013, Adelphia filed a motion to dismiss counterclaims (Doc. No. 34). On May 29, 2013, Arista and Botsivales timely filed their opposition. (Doc. No. 38). The instant motion to dismiss (Doc. No. 39) includes and expands upon the arguments made by Adelphia in its previous motion regarding the counterclaims. See Memorandum in Support of Motion to Dismiss Counterclaims and Third Party Complaint (Doc. No. 43), Parts V, VI, VII, and VIII. None of these additional arguments, at Parts V, VI, VII, and VIII, are properly before the Court and they should not be considered. Adelphia should not be allowed here to assert any additional arguments to the counterclaims in the guise of a new motion to dismiss. Nevertheless, to avoid further confusion in the record, Arista and Botsivales will again set forth here the arguments made in their previously filed opposition to the first motion to dismiss counterclaims.

[4] Count IV was erroneously captioned Extortion and Malicious Prosecution, but was amended to Abuse of Process (Doc. No. 43).

*Corp.*, 38 Mass App. Ct. 26, 29 n.3 (1995). Under the Massachusetts "discovery rule," the statute of limitations is tolled as a matter of fairness when a plaintiff has been injured by an "inherently unknowable" wrong. *See Flynn v. Associated Press*, 401 Mass. 776, 781 (1988). The "inherently unknowable" standard is used interchangeably with the "knew or should have known" standard. *Szymanski v. Boston Mut. Life. Ins. Co.*, 56 Mass. App. Ct. 367, 371 (2002). "The discovery rule starts the limitations period running when events occur or facts surface which would cause a reasonably prudent person to become aware that he or she had been harmed." *Felton v. Labor Relations Comm'n*, 33 Mass. App. Ct. 926, 928 (1992). In addition to tolling under the discovery rule, the statute of limitations may also be equitably tolled based upon evidence suggesting concealment of the existence of the cause of action through an affirmative act done with intent to deceive. *See* G. L. c. 260, § 12; *Patsos v. First Albany Corp.*, 433 Mass 323, 328-329 (2001).

Arista's claim for breach of the 2004 MOU is based upon specific allegations that Adelphia's obligations under the agreement survived termination for all properties identified by Adelphia, and that Adelphia failed to substantially meet those obligations. *See* Counterclaims ¶¶ 17-22. In its amended complaint, Adelphia admits that it both entered into the 2004 MOU and identified properties for development when it terminated the MOU. Amended Complaint ¶¶ 13-14. Adelphia has failed, however, to identify a single act undertaken to meet its continuing obligations with respect to those properties, nor can it.

Arista's claim (Count II) against Adelphia for fraud and misrepresentation related to the 2004 MOU is based upon specific allegations that Adelphia misrepresented its ability, expertise, knowledge, experience, availability, and willingness to assist Arista in developing properties. Counterclaims ¶ 14-35, 43, 46. Adelphia concealed its fraud and

misrepresentations from Arista for years, first by terminating the 2004 MOU, and then by fraudulently inducing Arista to continue the relationship in 2006. *Id.* There is no reasonable dispute that the 2004 MOU contemplates Adelphia undertaking substantial obligations to develop properties with Arista in development of retail property. *See* Exh. A, ¶¶ 2, 3, 7, 11, 12. Nor can there be any real dispute that its plain language imposes continuing obligations on Adelphia. Id. Those obligations did not end when Adelphia submitted its termination letter and combined offer of "suitable properties" mere months after entering the relationship. After Arista's receipt of Adelphia's list of properties, Arista tried to work with Adelphia as contemplated under the agreement. Before Arista could discover that its efforts would ultimately prove futile, Adelphia successfully concealed its true intent by reaffirming its interest and renegotiating the relationship through the 2006 MOU.

The statute of limitations on Arista's claims against Adelphia did not begin to run on the date of Adelphia's purported termination of the 2004 MOU. Operation of the statute was tolled either by Arista's inability to discover the harm giving rise to its claims, or as a result of evidence suggesting Adelphia's concealment of the existence of the cause of action through Adelphia's deceptive acts. By virtue of this deceit, the statute of limitations on Counts I and II as to the 2004 MOU was tolled and did not begin to run in 2004.

Adelphia's motion to dismiss Arista's claim for defamation (Count III) should be denied because there is no privilege that protects Adelphia with regard to the defamatory statements made at ¶ 15 of the Amended Complaint. The "litigation privilege" asserted by Adelphia "is restricted to cases in which public policy or the administration of justice required complete immunity from the threat of defamation suits." *Ezekiel v. Jones Motor Co., Inc.*, 374 Mass. 382, 385 (1978). The privilege "is available only when the challenged remarks are relevant or

pertinent to the judicial proceedings." *Encompass Ins. Co. of MA v. Giampa*, 522 F. Supp 2d 300, 308-309 (D. Mass. 2007); *Sullivan v. Birmingham*, 11 Mass. App. Ct. 359, 362 (1981).

None of the claims in Adelphia's complaint are premised on the defamatory remarks in ¶ 15, nor does the remark relate to or concern any of Adelphia's claims for relief in this action. In fact, Adelphia uses its complaint as a vehicle for defaming Arista and its representatives without making any connections to its allegations. These defamatory remarks have absolutely no relevance to the complaint. In these circumstances, the litigation privilege does not shield Adelphia from Arista's defamation claim.

The motion to dismiss Count IV should be denied as moot. Count IV was inadvertently mislabeled in the original Counterclaims as a claim for "Extortion and Malicious Prosecution." Arista amended the heading of this count as a claim for abuse of process as set forth in the allegations at ¶¶ 55-57.

Finally, Arista's counterclaim against Adelphia for unjust enrichment (Count V) is sufficiently pled for the same reasons set forth as to Grammas, supra. Additionally, it is properly pled in the alternative under Fed. R. Civ. P. 8(d)(2), which provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). Rule 8(d)(2) further provides that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Id. Arista is compelled to raise a claim for unjust enrichment in the alternative, to protect itself against such circumstances.

## CONCLUSION

WHEREFORE, for all the reasons set forth herein, and in the previous opposition, the motion to dismiss the Counterclaims and Third Party Complaint should be denied.

        ARISTA DEVELOPMENT, LLC and
        GREGORY BOTSIVALES,

        By its attorneys,


        /s/ Darah L. Schofield
        Julie Pruitt Barry (BBO #563018)
        jpbarry@nutter.com
        Darah L. Schofeld (BBO #663219)
        dschofield@nutter.com
        Nutter McClennen & Fish, LLP
        Seaport West
        155 Seaport Boulevard
        Boston, MA 02210
        (617) 439-2000

Dated: June 28, 2013


## CERTIFICATE OF SERVICE

    I certify that, on June 28, 2013, this document (filed through the ECF system) will be sent electronically to counsel of record for all parties who are registered participants as identified on the Notice of Electronic Filing (NEF).

        /s/ Darah L. Schofield