UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10486-RWZ


ADELPHIA AGIOS DEMETRIOS, LLC

v.

ARISTA DEVELOPMENT, LLC, *et al.*


MEMORANDUM OF DECISION

April 8, 2014


ZOBEL, D.J.

Plaintiff Adelphia Agios Demetrios, LLC ("Adelphia"), has sued defendants Arista Development, LLC ("Arista"), and its manager, Gregory Botsivales,[1] for fraud, breach of contract, breach of the implied covenant of good faith, and violation of Massachusetts General Laws chapter 93A.  Arista has filed five counterclaims against Adelphia and its employee John Grammas, for breach of contract, fraud, defamation, abuse of process, and unjust enrichment.

Now pending are two motions to dismiss the counterclaims (Docket ## 42 and 47).[2]  The first motion contains multiple grounds, some of which apply only to Grammas and others which pertain to Grammas and Adelphia.  The second is a special motion to

---

[1]Adelphia also named two other Arista employees, Harry Botsivales and Scott Weymouth, in the complaint.  In a previous memorandum of decision (Docket # 23), I dismissed all claims against these defendants.

[2]Adelphia had previously filed another motion to dismiss counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket # 37).  Because Arista thereafter filed an amended answer, third party complaint, and counterclaims (Docket # 40), Adelphia's motion is moot.

dismiss the defamation and abuse of process counterclaims because they are based on Adelphia's exercise of its right of petition.  See Mass. Gen. L. ch. 231 § 59H.  Adelphia and Grammas have also filed two motions for resolution of a discovery dispute prior to resuming mediation, which the parties have agreed to pursue (Docket ## 61, 64).

My previous memorandum of decision (Docket # 23) sets forth the relevant facts and I do not repeat them here.  I resolve the pending motions as follows.

**I.     Motion to Dismiss Counterclaims against Adelphia Agios Demetrios, LLC, and Third Party Complaint against John Grammas (Docket # 42)**

**A.     Counterclaim I: Breach of Contract**

Arista alleges that Adelphia and Grammas failed to perform their obligations under the 2004 and 2006 memoranda of understanding (MOU) and their continuing obligations following the termination of each MOU.  First Am. Countercls. & Third Party Compl., Docket # 40, at ¶ 43.

**1.     Grammas**

Adelphia and Arista signed the 2004 MOU, save for paragraphs 6 and 7, which also apply to Grammas in his individual capacity.  Docket # 41-1.  Paragraph 6 prohibits Adelphia and Grammas from circumventing Arista regarding any property which could be suitable for development as a Walgreens project.  Id. ¶ 6.  Paragraph 7 requires Adelphia and Grammas to provide periodic status updates on potential project sites it has identified.  Id. ¶ 7.  The MOU expressly states that the obligations in paragraphs 6 and 7 survive the termination of the MOU.  Id.

Grammas asserts that Arista's counterclaim for breach of the 2004 MOU should

2

be dismissed "to the extent that it relies on obligations outside of paragraphs 6 and 7 of the MOU." Mem. in Supp., Docket # 43, at 4.  I agree.  One cannot breach a contract to which he is not a party.  See, e.g., Flattery v. Gregory, 489 N.E.2d 1257, 1259 (Mass. 1986) (citing Restatement (Second) of Contracts §§ 304, 309 (1981)).  Here, because the contract creates no duty from Grammas to Arista outside of paragraphs 6 and 7, he cannot be held liable for breach.  Arista's counterclaim fails to the extent it relies on obligations defined elsewhere in the agreement.

Furthermore, Grammas did not sign any part of the 2006 MOU; it was executed solely by Adelphia and Arista.  Thus, by the same logic, the portion of Arista's counterclaim based on the alleged breach of the 2006 MOU does not survive.[3]

### 2.    Grammas and Adelphia

Grammas and Adelphia contend Counterclaim I is barred by the statute of limitations as it relates to the 2004 MOU.[4]  Mem. in Supp. at 6-9.  In Massachusetts, contract actions are subject to a six-year statute of limitations.  Mass. Gen. L. ch. 260 § 2.  The limitations period is calculated as if the defendant filed the counterclaims at the time the plaintiff brought the lawsuit.  Id. § 36.  A court may dismiss a counterclaim on statute of limitations grounds if it is clear from the face of the pleading that the counterclaim is time-barred.  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d

---

[3]In its memorandum in opposition, Arista finesses its first counterclaim into a promissory estoppel-like argument.  Mem. in Opp., Docket # 50, at 5.  But Arista pled breach of contract, not promissory estoppel.  Its transformed theory of liability comes too late.  See N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc., 537 F.3d 35, 57 (1st Cir. 2008) (district court acts within its discretion when it declines to permit advancement of legal theory first raised in opposition to motion to dismiss).

[4]They do not challenge the 2006 MOU portion of the counterclaim.

315, 320 (1st Cir. 2008) (quotation and citation omitted); Maddocks v. Ricker, 531
N.E.2d 583, 589 n.11 (Mass. 1988).  The required clarity is lacking here because the
2004 MOU imposes post-termination obligations on Grammas and Adelphia and does
not specify an end date to those obligations.  Thus, I cannot determine precisely when
the claim accrued.

Applying the discovery rule further supports Arista's position.  "[T]he discovery
rule will stop the statute of limitations from running by postponing the accrual of a claim
until a plaintiff discovers, or a reasonable person in the plaintiff's position should have
discovered, that she had been harmed or may have been harmed by the defendant's
conduct."  Sheila S. v. Comm'r, 783 N.E. 2d 868, 872-73 (Mass. 2003).  Did Arista know,
or should a reasonable person have discovered, that it was harmed by Gammas's and
Adelphia's conduct?  See Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 741 (Mass. 1990)
(concluding plaintiff need only know that she was harmed by defendant's conduct—as
opposed to knowing that defendant violated a legal duty—to start the limitations clock).
It is a close question, but I conclude in the negative.  Arista tried to work with Grammas
and Adelphia after the termination of the 2004 agreement.  Mem. in Opp. at 9.  But
Adelphia and Grammas, Arista claims, strung it along, reaffirming its interest and
renewing the relationship via the 2006 MOU before Arista ultimately realized its efforts
were futile.  Id.  At this early stage in the litigation, and taking as true all facts that Arista
pleads, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), the facts suffice to give Arista the
benefit of the discovery rule.

Count I survives as to paragraphs 6 and 7 of the 2004 MOU with respect to

Grammas and in its entirety with respect to Adelphia.

### B.   Counterclaim II: Fraud and Misrepresentation

Arista alleges that Grammas, individually and on behalf of Arista, made false and misleading statements regarding his abilities and expertise, among other things, in order to fraudulently induce Arista to sign the 2004 and 2006 MOUs.  First Am. Countercls. & Third Party Compl. at ¶ 46.  "Under the common law, fraud is a knowing false representation of a material fact intended to induce a plaintiff to act in reliance, where the plaintiff did, in fact, rely on the misrepresentation to his detriment."  Fordyce v. Town of Hanover, 929 N.E.2d 929, 936 (Mass. 2010).

#### 1.   Grammas

Grammas challenges Counterclaim II on the ground that Arista's fraud allegations rely on obligations not contained in paragraphs 6 and 7 of the 2004 MOU.  Mem. in Supp. at 4.  His defense is unavailing because Arista's fraud claim does not depend on Grammas's status as a party to the contract, but on the statements he made. Statements of present intention regarding future conduct are actionable if they "misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage."  McEvoy Travel Bureau, Inc. v. Norton Co., 563 N.E.2d 188, 192 (Mass. 1990).  Arista alleges that Grammas misrepresented his ability and intention to find suitable properties.  First Am. Countercls. & Third Party Compl. ¶¶ 13-14, 18, 23-28.  In doing so, it has properly stated a claim for fraud.

#### 2.   Grammas and Adelphia

Grammas and Adelphia move to dismiss Counterclaim II as time-barred.[5]  A claimant must commence a fraud action no later than three years after the claim accrues.  McEneaney v. Chestnut Hill Realty Corp., 650 N.E.2d 93, 96 (Mass. App. Ct. 1995) (citing Mass. Gen. L. ch. 260 § 2A).  The complaint—and by operation of law, the counterclaims—in this action were filed on March 15, 2012.  Docket # 1.  Did the cause of action accrue by March 15, 2009, three years before that time?  I believe it did.  Even assuming Grammas and Adelphia pulled the wool over Arista's eyes through March 26, 2006, the date it signed the 2006 MOU, Arista does not allege that their misrepresentations continued thereafter.  First Am. Countercls. & Third Party Compl. at ¶ 29 (listing date of signing).  In fact, Arista acknowledges just the opposite: "[a]lmost immediately after executing the 2006 MOU, it became apparent to Arista that Grammas and Adelphia did not possess the requisite abilities, expertise, knowledge, experience, and willingness to meet their substantial obligations under the 2006 MOU."  Id. at ¶ 31.  In other words, Arista knew "[a]lmost immediately" after March 26, 2006 that Grammas's and Adelphia's conduct caused it harm, but waited for six years—twice the allowed period—to file its action.  The discovery rule cannot save Counterclaim II under these circumstances.

However, compulsory counterclaims—those that arise from the same transaction

---

[5]Again, Grammas and Adelphia challenge only the 2004 MOU portion of the counterclaim.  I am empowered, however, to inquire sua sponte whether Arista's claim is time-barred in its entirety. McGuigan v. Conte, 629 F. Supp.2d 76, 84 n.12 (D. Mass. 2009) (citing Cardona Del Toro v. United States, 983 F.2d 1046, No. 92-1845, 1993 WL 7933, at *1 (1st Cir. Jan. 19, 1993) (unpublished table decision)).  The First Circuit has affirmed a district court's sua sponte dismissal of a complaint as frivolous when the claim it asserts is clearly barred by the statute of limitations.  Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991) (per curiam).

or occurrence as the subject matter of the claim—are exempt from the limitations period and may be brought as a setoff to plaintiff's claims.  Mass. Gen. L. ch. 260 § 36.  Thus, I must ask whether Arista's counterclaim is compulsory.  Grammas and Adelphia argue that Counterclaim II only arises from the same transaction or occurrence as Adelphia's fraud claim with respect to the 2006 MOU, because its fraud claim only referenced that MOU.  Their argument is inconsistent with the broad construction given to the phrase "transaction or occurrence."  Kersey v. Dennison Mfg. Co., Civ. A. No. 89-2650-MA, 1992 WL 71390, at *13 (D. Mass. 1992) (stating that courts simply require "a logical connection between the occurrences underpinning the claims and counterclaims").  A transaction may include several occurrences depending on their logical relationship.  United Fruit Co. v. Standard Fruit & Steamship Co., 282 F. Supp. 338, 339 (D. Mass. 1968) (quoting Moore v. N.Y. Cotton Exch., 270 U.S. 593, 610 (1926)).

Here, the 2004 and 2006 MOUs are logically related.  As discussed above, Arista continued negotiating with Grammas and Adelphia after the termination of the 2004 MOU, culminating with the execution of the 2006 MOU.  Thus, the MOUs are logically connected occurrences.  Arista's breach of contract counterclaim is compulsory, is not subject to the statute of limitations, and may be asserted to the extent it offsets Adelphia's claims.

### C.    Counterclaims III and IV: Defamation and Abuse of Process

Counterclaim III alleges that Grammas and Arista "made vicious, false, and defamatory statements" in the complaint.  Id. at ¶ 52 (citing First Am. Compl., Docket #

7, at ¶¶ 15, 40-41, 92).[6]  Counterclaim IV alleges that Grammas and Arista filed the complaint merely to make these statements and abused the judicial process by doing so.  Id. at ¶¶ 56-57.

### 1.    Grammas and Adelphia

Grammas and Adelphia contend that Adelphia made the statements to which Arista objects in the initiation of a legal proceeding, and that they are therefore absolutely privileged.  Mem. in Supp. at 9.  "[S]tatements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged, provided such statements relate to that proceeding."  Sriberg v. Raymond, 345 N.E.2d 882, 883 (Mass. 1976).  Arista rests its opposition on the last part of this rule; namely, that the allegedly defamatory and abusive remarks "have absolutely no relevance to the complaint."  Mem. in Opp. at 10.  Relevance is broadly construed. Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984) (interpreting Massachusetts law); Aborn v. Lipson, 256 N.E.2d 442, 443 (Mass. 1970).

Under this generous standard, the statements are relevant.  The remark about the call girl is pertinent to Arista's demand for project sites, which is itself pertinent to Arista's alleged inducement of Adelphia to sign the 2006 MOU.  See First Am. Compl. ¶ 89.  The CVS and Rite-Aid statements are relevant to the fraud claim because they are

---

[6]Paragraph 15 recalls a March 2006 conversation between an Adelphia employee and Arista employee Scott Weymouth, in which Weymouth reported that Arista manager Gregory Botsivales planned to "hire a call girl" for the Walgreens New England Real Estate Representative to convince the representative to favor Arista as Walgreens's developer.  Paragraphs 40 and 41 state that Arista developed three locations Adelphia identified into CVS or Rite-Aid pharmacies instead of Walgreens pharmacies.  Paragraph 92 alleges that Botsivales used an expletive and told an Adelphia representative that he would "blackball" Adelphia to prevent it from doing future real estate deals.

arguably evidence that, contrary to its promise, Arista allegedly did not work with Adelphia to develop ten sites per year.  Id. ¶ 45(c).  And they are plainly relevant to the breach of contract claim because, given that Arista allegedly accepted the sites Adelphia identified, Adelphia would be entitled to its $50,000 "market development overhead fee" (and possibly other fees) for the CVS and Rite-Aid sites.  Id. ¶¶ 49-52.  Finally, Adelphia expressly referenced the "blackballing" comment as an unfair method of competition in its Chapter 93A claim.  Id. ¶ 92.  Thus, as relevant statements, they are absolutely privileged.  Sriberg, 345 N.E.2d at 883.  Counterclaims III and IV fail.[7]

### D.   Counterclaim V: Unjust Enrichment

Arista alleges that Grammas and Adelphia did not meet their contractual obligations under the 2004 and 2006 MOUs but nevertheless kept the money Arista paid them, and thereby unjustly enriched themselves.[8]  First Am. Countercls. & Third Party Compl. ¶¶ 60-62.  Unjust enrichment requires "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value."  Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (citing 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 68:5 (4th ed. 1993)).

---

[7]For this reason, I need not consider Grammas's and Adelphia's special motion to dismiss (Docket # 47).

[8]In its memorandum in opposition, Arista states that it brings the unjust enrichment claim in the alternative to its breach of contract claim.  Mem. in Opp. at 6-7.

### 1.     Grammas

Grammas moves to dismiss on the ground that the 2004 and 2006 MOUs provided payment only to Adelphia, not him.  Therefore, he says, he was not actually enriched by the transactions, and the first element listed above is not satisfied.  Mem. in Supp. at 6.  He is correct.  The MOUs require Arista to pay Adelphia; they say nothing about payment to Grammas.  2004 MOU, Docket # 41-1, at ¶¶ 5(a), 9; 2006 MOU, Docket # 10-1, at ¶¶ 5(a), 9.  Nor does the third party complaint allege that Arista paid Grammas personally.  Although it states that Grammas "retained payment," this simply refers to the contractually-defined payments, which went to Adelphia.  Because Arista cannot satisfy an essential element of its unjust enrichment claim, Grammas's motion to dismiss is allowed.

### 2.     Adelphia

"An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law."  Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005).  A statutory or common law claim for damages is an adequate legal remedy. Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (citation omitted).  It makes no difference whether a party ultimately prevails on its claims seeking legal remedies; "[t]heir mere availability is a bar to a claim of unjust enrichment."  Id.  Here, Arista's breach of contract claim provides an adequate remedy at law for the damages that might be awarded for unjust enrichment.  One Wheeler Rd. Assocs. v. Foxboro Co., 843 F. Supp. 792, 799 (D. Mass. 1994).  Therefore, it may not bring an unjust enrichment claim.

II.     **Discovery Motions (Docket ## 61, 64)**

Grammas and Adelphia have filed two discovery motions seeking production of documents for six additional development sites.  I hold these motions in abeyance pending the outcome of the parties' agreed upon mediation.

III.    **Conclusion**

Adelphia's motion to dismiss counterclaims (Docket # 37) is DENIED AS MOOT. Grammas's and Adelphia's motion to dismiss first amended counterclaims and third party complaint (Docket # 42) is ALLOWED IN PART and DENIED IN PART. Counterclaim I may proceed against Grammas as to the obligations defined paragraphs 6 and 7 of the 2004 MOU and against Adelphia in its entirety.  Counterclaim II may proceed against Grammas and Adelphia.  Counterclaims III-V are DISMISSED. Grammas's and Adelphia's special motion to dismiss Counterclaims III and IV (Docket # 47) is DENIED AS MOOT.  The discovery motions (Docket # 61, 63) are HELD IN ABEYANCE.  The parties shall return to mediation.  If mediation is unsuccessful, the court will enter a new scheduling order.

_____April 8, 2014_____                    _____/s/Rya W. Zobel_____

        DATE                                     RYA W. ZOBEL
                                          UNITED STATES DISTRICT JUDGE